The opinion of the Court * was drawn up by
Parker C. J.
The material facts upon which we are to ¿ecj¿e this case are, that the island in dispute between the parties is situated in Pawtucket river, where it is not navigable for ships or boats, and where the tide does not ebb and *283 flow ; that the plaintiffs are owners of a tract of land on the east side of the river extending up and down the river beyond the island, and that the defendants are owners of a similar tract on the west side of the river; that the island is not held by any separate grant by either, nor does any other person claim it by virtue of any grant or by possession ; and that both the plaintiffs and the defendants, and those under whom they severally claim and hold their farms on the main land, have occasionally cut trees on the island, but that no agricultural improvement has been made thereon. In a partition of the estate among the heirs of Ebenezer Bucklin, father of the grantor of the plaintiffs, this island was set off to those heirs in 1766, but it does not appear that any possession was taken or hoi den under the partition, except the occasional cutting of wood for forty or fifty years past. It appeared also, that the defendants, or those under whom they claimed, had cut wood on the island for thirty years past at pleasure, without any objection having been made by those who held under Bucklin.
It is obvious from this statement, that neither the plain tiffs nor the defendants had obtained such exclusive possession of the island, or any part of it, as would enable either to maintain trespass against the other, without referring their possession to some title ; and it is equally obvious, that no title appears in either, except what may be derived from their property in the land on either side of the stream or river opposite to the island. And thus we are obliged to consider the rights of those who own the land on the banks of streams or rivers not navigable. And this depends altogether, we think, upon the principles of the common law, there being no statute of this commonwealth, or of the province, nor ordi nonce of the colony, which alters the common law in this respect, except in relation to the fisheries, which having from the beginning been made the subjects of legislative care, must be governed by such rules and regulations as the several legislatures have established.
The common law recognises an important distinction, as to the use of waters and the property of the soil, between rivers or waters navigable, and those which are not navigable. *284 The former invariably and exclusively belong to the public, unless acquired from it by individuals under grant or prescription. The latter are held to belong to those whose land borders on the waters ; so that they have the exclusive right of fishing in front of their own land, and have a property in the bed or soil of the river under the water, subject however to an easement or right of passage up and down the stream in boats or other craft for purposes of business, convenience, or pleasure. This is called in the civil law a servitude, which is quite consistent with the right of property. The text book from which this common law principle is most generally deduced, is Sir Matthew Hale’s celebrated treatise Be Jure Maris, published in Hargrave’s Law Tracts, p. 37 ; on recurrence to which it will appear, that Hale referred to the ancient British writer, Bracton, for the foundation of his doctrine, and that he also relied upoo the Roman civil law, as compiled in the Digest in the reign of Justinian. See Dig. lib. 41, tit. 1, De acquirendo Rerum Dominio, leg. 7, 12, 29, 30, 38, 56, 65, and perhaps many others.
This public right in navigable waters and the soil or flats under them, is changed by the colonial ordinance of 1641, which gives to the proprietors of upland bordering on such places, the property of the soil down to the channel, unless it exceed the distance of one hundred rods,[1] reserving still however to the public the right of passage over the water. But according to judicial constructions of this ordinance, these flats may be occupied by wharves or other erections, provided the passage to lands above is not thereby too much straitened or obstructed. Anc. Charters &c. 148.
There appears however to be an important difference between the common and the civil law, in regard to the rights of the public and individuals, on this subject. By the former it would seem, that the right of the king or the public, is limited to those places, whether bays, coves, inlets, arms of the sea or rivers, in which the tide ebbs and flows, this being the definition of navigable waters ; whereas by the civil law, *285 all rivers properly so called, even above tide waters, provided they are navigable by ships or boats, or perhaps any other floating vehicle, are considered as public property ; and so is the French law, as will appear by the Code Napoleon, liv. 2, tit. 1, c. 3, art. 538, in which are enumerated, among other subjects of public domain, les Jleuves et rivieres navigables on flottables, which last word seems to have been coined to comprehend all streams on which boats, rafts, lumber, or any other species of property may be transported. It is probable that this distinction arose from the difference in magnitude between the rivers on the continent and those on the island, many of the former being navigable much beyond the ebbing and flowing of the sea, and few, if any, of the latter being of consequence for passage or transportation above the tide.
The common law right of public property, restricted as it seems to be except for easement or right of way, may be found very inconvenient in its application to many of the magnificent fresh water rivers of the United States, which are navigable for small vessels and boats much above the flux of the tide, especially by the aid of steam power so rapidly getting into use. And on this account it has been decided by the Supreme Court of Pennsylvania, that the public right to the bed of the river Susquehanna is the same as it is to the ports, harbours, &c., upon the sea ; so that the proprietor of the banks could not extend his claim of property usque ad filum medium aquce, as by the common law he would have the right. Carson v. Blazer, 2 Binney, 475. But the Supreme Court of New York felt themselves bound by the common law, and adjudicated accordingly in the cases reported in 17 Johns. R. 211, and 20 Johns. R. 90.[1] And *286 in a question relating to the fishery m the river Connecticut, one of the largest in the eastern part of the United States, the Supreme Court of Connecticut adopted the principles of the common law in regard to the extent of the property of borderers upon the river down to the filum aquce. or middle of the river. Adams v. Pease, 2 Connect. R. 481. In this commonwealth the question has not directly arisen, except in regard to the fisheries, which are held to he the exclusive right of the owners of the banks of rivers, unless otherwise appropriated by acts of the legislature, this right being, according to our common law, held subject to the control of the legislature, unless by particular grant or prescription it has been held free of that control.-
With respect to the river now in question, however, and the part of it where the island in controversy is found, which is above tide waters, and which we have a right to presume is not navigable even for boats, we think it clear that the common law doctrine applies, giving to the proprietors of the hanks the property of the bed of the river usque ad jilum medium aquce [2]
*287 The question then arises, to whom belongs an island formed oy a division of the waters of a river, where but for the island the borderers on the river would meet each other in the middle of the river; and this question must be settled by analogy to cases of a similar nature, which, though they may have arisen in other countries under the jurisdiction of the civil law, have nevertheless been adopted- by the common law as fairly coming within its general principles.
The doctrine of alluvion and its consequences seems to be very clearly settled. That which is formed by gradual accretion, belongs to the owner of the soil to which it adheres.[3] The land which may be separated from a man’s farm by a sudden change of the bed of the river may be reclaimed by him who lost it. Islands formed in the river, if altogether on one side of the dividing line, the filum aquoe, belong to him who owns the bank on that side; if formed in the middle of the river, they are appropriated to the owners on each side, - not in common, but in severalty, according to their original dividing line, the filum aquae as it is where the waters begin to divide.* [1] *Such is the civil law, and the justice of this appropriation cannot be questioned, ei If the filum aquce divide itself, and one pari take the east and the other the west, and leave an island in the middle between both fila, the one half will belong to the one lord, and the other to the other.” Hargr. Law Tr. 37. So by the civil law, Dig. lib. 41, tit. 1, § 29. “ Inter eos qui secundum unam ripam prcedia habent, insula in flumine nota, non pro indiviso communis fit, sed regionibus quoque divisis; quantum enim ante cujusque eorum ripam est, \tantmri\ veluti linea in *288 directum per insulam transducta, quisque eorum in eo habebit vertís regionibus.’’’’ Although this seems applicable to several owners on the same side of the river, yet the principle must be the same when applied to the owners of the opposite sides, for it treats the river, as to the question of property in its bed, in the same manner as if no island were there. And so the compilers of the Napoleon Code consider it, who without doubt, in most of that code, had reference to the civil law. The 561st article of the Code Napoleon, tit. 2, c. 2, is in these words : — “ Les iles et attérrissements qui se foment dans les rivieres non navigables et non flottables, ap partiennent aux propriétaires riverains du cóté ou, Vile s’est formée : si Vile n’est pas formée d'un seul cóté, elle appartient aux propriétaires riverains des deux cotes, a partir de la ligne qui on suppose trocee au milieu de la riviere.” Although these wise provisions seem to be confined to the case of islands recently formed, the same reason will extend them to the case of islands, the origin of which cannot be traced, unless the property in them has been otherwise appropriated according to the rules of law ; for whether originally formed by deposits from the water, or by a sudden division of the river, would seem to be immaterial, unless the owner of one side should be able to show that it was created by a disruption from his land.
According to these principles therefore, this island belongs in severalty to these borderers on each side of the stream, if their lands on the main are coextensive with the island ; if not, then the owners of the next adjoining lots will have a right to claim a portion of the island conformable to their lines. And this settles the present case in favor of the plaintiffs, for it appears that the bridge removed extended from their land to the island; the removal of it was therefore a trespass. But in regard to the trees cut down, it is not shown on which part of the island they stood ; so that whether they belonged to the plaintiffs, or to the defendants, does not appear.
The verdict, being for the defendants, must be set aside and a new trial granted.

 Morton J. did not sit in this cause.

 As to this ordinance, see Barker v. Bates, 13 Pick. 255; Lapish v. Bangor Bank, 8 Greenl. 85.

 See Canal Commissioners and Canal Appraisers v. People, 5 Wendell, 423; where it is held by Chancellor Walworth, that the principle of the common law extending grants usque ad filum aquce is not sufficiently broad to embrace the fresh water lakes in New York. As to them the local law of that State assigns the shores down to ordinary low water mark to the riparian owners, and the bed of the lakes, with the land therein to the public.
In the same case it was held by Senator Beardsley, that this principle of the common law, extending grants usque ad filum aquce¡ does not apply to the large fresh water rivers of New York, or, at all events, a patent bounded on *286 a river navigable above tide water passes no interest to the patentee in the bed of the river as against the State.
But see People v. Canal Appraisers, 13 Wendell, 355, where the applica bility of this common law principle to such rivers is considered as no longei subject to a question.
In this last case it was also decided, that where the stream is navigable foi boats or rafts, the public have a right to use it for these purposes, and the rights of the adjoining proprietors are subject to the public easement. But the State cannot divert the water of the stream or interfere with it in any other manner, which will render it less useful to the proprietors of the adjoin ing shores. See also Berry v. Carle, 3 Greenl. 269; 3 Kent’s Comm (3d ed. 429.

 See Gavet v. Chambers, 3 Ohio R. 496; Ex parte Jennings, 6 Cowen, 518. Canal Commissioners and Carnal Appraisers v. People, 5 Wendell, 423; People v. Canal Appraisers, 13 Wendell, 355; Arnold v. Mundy, 1 Halsted 1; King v. King, 7 Mass. R. 496; Claremont v. Carleton, 2 N. Hamp. R. 369; Shrunk v. Schuylkill Navig. Co., 14 Serg. & Rawle, 71; Meade v. Haynes, 3 Randolph, 33; Morrison v. Keen, 3 Greenl. 474; Warner v. Southworth, 6 Connect. R. 471; Browne v. Kennedy, 5 Harr. & Johns. 195; Howe v. Richards, 4 Call, 411; Tyler v. Wilkinson, 4 Mason, 297.
The proprietors of islands separated by a stream, in which the tide does not ebb and flow, own respectively to the centre of the stream, unless re *287 strained by the language of the grant under which they hold. People v. Canal Appraisers, 13 Wendell, 355.
S®3 ao to the boundaries of towns divided by a river, Ipswich, Petitioners. 13 Pick. 431.
As to nations or states so divided, see Handly v. Anthony, 5 Wheat. R 374.

 See New Orleans v. United States, 10 Peters, 717; King v. Yarborough, 8 Barn. & Cressw. 91; 3 Kent’s Comm. (3d ed.) 428.

 See 3 Kent’s Comm. (3d ed.) 428.
The title of an island found upon the bed of a navigable river, is pnrsá facie in the State. Middletown v. Sage, 8 Connect. R. 221.